UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL A. RISKIN,<br><br>        Petitioner,<br><br>  v.<br><br>M. MARTEL, WARDEN,<br><br>        Respondent. | 1:08-CV-00539 LJO DLB HC<br><br>FINDING AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS<br><br>OBJECTIONS DUE WITHIN THIRTY (30) DAYS |

Petitioner Michael A. Riskin, ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**FACTUAL AND PROCEDURAL BACKGROUND**

Following a jury trial in the Stanislaus County Superior Court, Petitioner was convicted of aggravated sexual assault on his daughter, a child under 14 years of age and 10 or more years younger than Petitioner (Count One, § 269, subd. (a)),[1] a forcible lewd act on his daughter, a child under 14 years of age (Count Three, § 288, subd. (b)(1)), and a lewd act on his son, a child under 14 years of age (Count Four, § 288, subd. (a)). The jury found true an allegation, included in Count Three, of tying or binding his daughter in the commission of the crime (§ 667.61 ("One Strike Law"), subds. (b), (c)(4), (e)(6)) and each count's allegation of extension of the statute of limitations (former § 803, subd. (g)).[2] The court sentenced Petitioner to 30 years to life.

On direct appeal to the California Court of Appeal, Petitioner raised multiple claims, including a claim that the trial court's imposition of a One Strike Law term of 15 years to life for

---

[1] All statutory references are to the California Penal Code unless otherwise noted.

[2] At the time of trial, former section 803(g) set out a special statute of limitations for sex crimes against children.

1  Count Three was improper.  See Respondent's ("Resp't") Lodged Doc. 1.  More Specifically,
2  Petitioner argued that the sentence violated his constitutional right against ex post facto laws as the
3  prosecution had failed to prove beyond a reasonable doubt that the act comprising Count Three was
4  committed after the enactment of the One Strike statute.  Id.  On September 22, 2006, the Court of
5  Appeals, Fifth Appellate District agreed with Petitioner regarding his ex post facto claim and
6  remanded the matter for resentencing on Counts Three and Four.[3]  See Resp't Lodged Doc. 5.  The
7  Court of Appeal affirmed the judgement in all other respects.  Petitioner filed a petition for review in
8  the California Supreme Court on October 23, 2006.  See Resp't Lodged Doc. 6.  The California
9  Supreme Court denied the petition for review on January 3, 2007.  See Resp't Lodged Doc. 7.

10  On April 16, 2008 Petitioner filed a petition for a writ of certiorari in the United States
11  Supreme Court.  See Resp't Lodged Doc. 9.  The United States Supreme Court denied the petition on
12  June 16, 2008.  See Resp't Lodge Doc. 10.

13  On February 19, 2010, Petitioner filed a petition for writ of habeas corpus with the California
14  Court of Appeal.[4]  (In re Michael A. Riskin, No. F059503 (Cal. March 11, 2011).  On March 11,
15  2011, the Court of Appeal, Fifth Appellate District summarily denied the petition.  Id.  The record
16  does not reveal any other state court habeas proceedings.

17  Petitioner filed the instant petition for writ of habeas corpus on April 11, 2008.  See Doc. 1.
18  On April 17, 2008, Petitioner filed an amended petition.  See Doc 4.  Respondent filed an answer to
19  the petition on September 3, 2008.  See Doc. 17.  On June 29, 2010, Petitioner filed a traverse.  See
20  Doc. 37.  The Petition contains four grounds for relief.  However, as Petitioner apparently concedes,
21  only two grounds presented in the federal habeas petition (Grounds One and Two), were exhausted

---

[3] On April 16, 2007, with the case before it on remand, the trial court sentenced Petitioner to a total aggregate term of 21 years to life.  See Resp't Lodged Doc. 8.

[4] The Court takes judicial notice of the California Court of Appeal's docket in In re Michael A. Riskin on Habeas Corpus, case number F059503, available on the California courts' website at http://appellatecases.courtinfo.ca.gov, (In re Michael A. Riskin, No. F059503 (Cal. March 11, 2011)).  See Mir v. Little Company of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988) (court may take judicial notice of court records).

on direct appeal.[5] Petitioner therefore moved for a stay of the federal habeas action pursuant to Rhines v. Weber, 544 U.S. 269 (2005), to pursue the unexhausted claims of his mixed petition in state court.[6]  See Doc. 24.  After determining that Petitioner had not satisfied the factors set forth in Rhines, the Court denied Petitioner's motion for a stay on May 18, 2009.  See Doc. 27.

## DISCUSSION

**I.    Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n. 7, (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution.  The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), cert. denied, 522 U.S. 1008, (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), cert. denied, 520 U.S. 1107 (1997), overruled on other grounds by Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

**II.    Standard of Review**

Where a petitioner files his federal habeas petition after the effective date of the

---

[5] As noted in the Court's Order of May 18, 2009, denying Petitioner's motion to stay, "Petitioner admitted that he had not exhausted [Grounds Three and Four] because they were "subordinate" to the other claims and/or were overlooked due to ineffective assistance of appellate counsel. See Doc. 27, Order denying motion to stay; see also Amended Petition at 6.

[6] A petition is "mixed" if it contains both exhausted and unexhausted claims. In Rhines, the Supreme Court acknowledged that a federal habeas action may be stayed while a petitioner exhausts the unexhausted claims of the mixed petition in state court. The Court found that this procedure "should be available only in limited circumstances." Rhines, 544 U.S. at 277.  Those limited circumstances exist when a petitioner can satisfactorily demonstrate three factors: (1) good cause for failing to exhaust the unexhausted claims in state court; (2) the claims are potentially meritorious; and (3) petitioner has not intentionally engaged dilatory litigation tactics. Id. at 277–78.

Anti Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, --- U.S.----, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, --- U.S. ----, 131 S.Ct. 733, 737, 178 L.Ed.2d 649 (2011). "A state court's determination that a claim lacks merits precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."

Miller El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law. See Lambert v. Blodgett, 393 F.3d 943, 976 77 (2004).

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Richter, 131 S.Ct. at 784.

## III.  Review of Petitioner's Claims

Petitioner raises four grounds for relief. Petitioner's Ground One asserts his Fifth Amendment rights were violated by the trial court's admission, for impeachment purposes, of statements he made during a pretext telephone call with his daughter. See Amended Petition at 5. In Ground Two, Petitioner contends the trial court provided improper jury instructions regarding the burden of proof required to extend the statute of limitations. See Amended Petition at 5. In Ground Three, Petitioner claims the state's prosecution of the charges violated his rights under the Ex Post Facto Clause because state law extending the statute of limitations for his crimes was not in effect at the time he committed the charged offenses. See Amended Petition at 6. Petitioner's Ground Four asserts that he was afforded ineffective assistance of counsel.[7] See Amended Petition at 6.

**A.  Petitioner's Ground One: Trial Court's admission of Petitioner's statements made during a recorded pretext phone call with his daughter for the limited purpose of impeachment**

In Ground One, Petitioner alleges that his Fifth Amendment right to silence was violated by the trial court's admission of prior incriminating statements he made for the purposes of impeachment. See Amended Petition at 5, 15-16. Petitioner's statements were made during a pretext telephone call with his daughter, who Petitioner contends was acting as an agent of the police. See Amended Petition at 5. Petitioner simultaneously argues that the admission of this

---

[7] Respondent initially argues that Petitioner failed to **exhaust** the state court remedies by failing to present both Grounds Three and Four to the California Supreme Court. Respondent is correct. Notwithstanding the lack of **exhaustion**, both Grounds Three and Four fail on the merits as discussed below. See Cassett v. Stewart, 406 F.3d 614, 623–24 (9th Cir.2005) (an unexhausted claim may be denied on merits if it is "perfectly clear that the applicant does not raise a colorable federal claim.")

evidence violated his Sixth Amendment right to counsel.  See Amended Petition at 5, 17-22.

Addressing Petitioner's claim, the Court of Appeal stated:

> [Petitioner] argues that his impeachment with his statements from a pretext call with his daughter violated his constitutional rights to silence and counsel since she deliberately acted as a police agent to secure incriminating statements from him.  The Attorney General argues that neither constitutional right was violated.  We will consider each of [Petitioner's] arguments separately.
>
> As to his right to silence, [Petitioner] acknowledges that the United States Supreme Court created an exception in *Harris v. New York* (1971) 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (*Harris*) to the general rule of *Miranda v. Arizona* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (*Miranda*) so as to allow solely for impeachment the statements of the accused that are otherwise inadmissible under *Miranda*. Nonetheless, he argues that language in *Missouri v. Seibert* (2004) 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (*Seibert*) about police questioning that intentionally violates *Miranda* puts an end to *Harris's* impeachment exception.  We disagree.
>
> In *Seibert*, a police officer "made a 'conscious decision' to withhold *Miranda* warnings, thus resorting to an interrogation technique he had been taught: question first, then give the warnings, and then repeat the question 'until I get the answer that she's already provided once.'" (*Seibert*, supra, 542 U.S. at pp. 605  606, 124 S.Ct. 2601.)  Even though the officer acknowledged that the accused's ultimate statement was " 'largely a repeat of information . . . obtained' prior to the warning," the trial court suppressed the prewarning statements but admitted the postwarning statements. (*Id.* at p. 606, 124 S.Ct. 2601, italics added.)  The high court condemned as violative of *Miranda* the "police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession." (*Id.* at p. 604, 124 S.Ct. 2601.)
>
> [Petitioner] emphasizes *Seibert's* language, inter alia, that in the wake of *Harris's* impeachment exception "some training programs advise officers to omit *Miranda* warnings altogether or to continue questioning after the suspect invokes his [or her] rights," that "deliberate questioning after invocation of *Miranda* rights" is a "growing trend," and that "the reason that question-first is catching on is as obvious as its manifest purpose, which is to get a confession the suspect would not make if he understood his rights at the outset." (*Seibert*, supra, 542 U.S. at pp. 610  611, fn. 2, 613, 124 S.Ct. 2601.)  He argues that the United States Supreme Court "now finds inadmissible for any purpose, including impeachment, statements that were deliberately obtained unlawfully from suspects."
>
> [Petitioner] correctly notes that *Seibert* fails to specify whether the repeated statement constituted part of the prosecution's case in chief or impeachment evidence on rebuttal.  Nonetheless, the majority opinion cites *Harris* only once in a footnote, Justices Kennedy and O'Connor cite *Harris* but once each in their concurring and dissenting opinions, respectively, and none of those three references criticizes the case. (*Seibert*, supra, 542 U.S. at pp. 610  611, fn. 2, 619, 623, 124 S.Ct. 2601.)  The notion that the high court so inscrutably overruled a landmark case in *Miranda's* lineage is absurd.
>
> In the alternative, [Petitioner] suggests that even if *Seibert* "does not extend that far" the high court nonetheless is "poised" to reexamine *Harris's* impeachment exception. With commendable candor, he acknowledges that he raises the issue to preserve his right of review in the California Supreme Court and the United States Supreme Court.

| | |
|---|---|
| 1 | Duly noted. |
| 2 | As to his right to counsel, [Petitioner] correctly notes that *Massiah v. United States* (1964) 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (*Massiah*) prohibits the admission of evidence that law enforcement secures in violation of the accused's constitutional right to counsel.  Equally correctly, the Attorney General notes that [Petitioner's] daughter made her pretext call on July 31, 2002, eight days before the district attorney's office filed a criminal complaint and arraigned him on August 8, 2002.  A long line of United States Supreme Court constitutional case law firmly establishes that "the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant" (*United States v. Gouveia* (1984) 467 U.S. 180, 187, 104 S.Ct. 2292, 81 L.Ed.2d 146) "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment" (*Texas v. Cobb* (2001) 532 U.S. 162, 167  168, 121 S.Ct. 1335, 149 L.Ed.2d 321).  (See *People v. Slayton* (2001) 26 Cal.4th 1076, 1079, 112 Cal.Rptr.2d 561, 32 P.3d 1073, not followed on another ground as dictum by *People v. Viray* (2005) 134 Cal.App.4th 1186, 1207, fn. 12, 36 Cal.Rptr.3d 693.)  Since [Petitioner's] statements to his daughter antedated the attachment of his constitutional right to counsel, *Massiah* offers him no solace. |

See Resp't Lodged Doc. 5.

The state courts' adjudication on this issue was reasonable under controlling Supreme Court law.  The Fifth Amendment protects a defendant from being "compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  Any statements taken in violation of the Fifth Amendment right against self-incrimination are excluded from the State's case in chief.  See Miranda v. Arizona, 384 U.S. 436, 466 (1966).  Additionally, the Supreme Court has held that after an accused clearly invokes his right to have counsel present during a custodial interrogation, officers must cease all questioning and may not reinitiate questioning on any matter until counsel is provided, "unless the accused himself initiates further communications, exchanges, or conversations with the police."  Edwards v. Arizona, 451 U.S. 477, 484  85 (1981).  However, in order to implicate Miranda and Edwards, the statements at issue must be the result of custodial interrogation.  See Montejo v. Louisiana, --- U.S. ----, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009).

In the context of impeachment or rebuttal, the prophylactic protections of Miranda are not applied as strictly.  While the Fifth Amendment prohibits the prosecution from impeaching a defendant with previously un-warned statements if actually coerced, New Jersey v. Portash, 440 U.S. 450, 459 (1979), absent evidence of actual coercion the amendment does not shield a defendant from

impeachment.  Harris v. New York, 401 U.S. 222, 225 (1971).[8]  Here, even presuming the statements were the product of custodial interrogation, Petitioner has not offered any theory or explanation that his statements made during the pretext phone call with his daughter were anything other than voluntary statements or otherwise made as a result of "actual coercion."

On this point the Supreme Court's opinion in Illinois v. Perkins, 496 U.S. 292 (1990) ("Perkins") is instructive.  In Perkins, the state attempted to solicit incriminating statements from defendant regarding a murder by placing an undercover agent in his cell.  Id. at 294 95.  Defendant, Perkins, confided in the agent and provided specific details regarding the murder.  Id. at 295.  Prior to these conversations, the undercover agent had not provided Miranda warnings to Perkins.  Id.  Noting that "[c]oercion is determined from the perspective of the suspect," the Perkins Court stated that "[c]onversations between suspects and undercover agents do not implicate the concerns underlying Miranda"  Id. at 298.  The High Court's analysis continued:

> It is the premise of Miranda that the danger of coercion results from the interaction of custody and official interrogation. We reject the argument that Miranda warnings are required whenever a suspect is in custody in a technical sense and converses with someone who happens to be a government agent. Questioning by captors, who appear to control the suspect's fate, may create mutually reinforcing pressures that the Court has assumed will weaken the suspect's will, but where a suspect does not know that he is conversing with a government agent, these pressures do not exist. The state court here mistakenly assumed that because the suspect was in custody, no undercover questioning could take place. When the suspect has no reason to think that the listeners have official power over him, it should not be assumed that his words are motivated by the reaction he expects from his listeners.

Id. at 297.

Similar to the incriminating statements made in Perkins, when Petitioner made the incriminating statements to his daughter, he did "not know that he [was] conversing with a government agent" and thus, under these facts, Petitioner has failed to demonstrate "actual coercion" resulting from a "'police-dominated atmosphere' and compulsion."  Id. at 296.  Consequently, the Court of Appeal's reliance on Harris and rejection of Petitioner's Fifth Amendment claim was not contrary to, or involved an unreasonable application of, clearly established Federal law.

---

[8]Contrary to Petitioner's argument for the end of the Harris exception, the Court agrees with the Court of Appeals assessment that "[t]he notion that the high court [has] so inscrutably overruled [such] a landmark case in Miranda's lineage is absurd."  See Resp't Lodged Doc. 5.

1    Petitioner's Sixth Amendment contentions similarly lack merit.  As correctly noted by the
2 Court of Appeal's decision, "a long line of United States Supreme Court constitutional case law
3 firmly establishes that "the right to counsel attaches only at or after the initiation of adversary
4 judicial proceedings . . . ."  See Resp't Lodged Doc. 5; Kirby v. Illinois, 406 U.S. 682, 688 (1972);
5 see also  United States v. Gouveia, 467 U.S. 180, 188 (1984) (finding that adversary judicial
6 proceedings may be initiated by way of formal charge, preliminary hearing, indictment, information,
7 or arraignment).  Here, the record confirms, "formal judiciary proceedings had not been instituted at
8 the time of the pretext telephone call" which was made on July 31, 2002.  Though law enforcement
9 had previously arrested Petitioner and released him on bail, the state did not file its initial formal
10 complaint against Petitioner until the date of Petitioner's arraignment on August 8, 2002.  See
11 Reporter's Transcript ("RT") at 88, 90. 469, 570-571, and 789; Clerk's Transcript ("CT) at 1-4.
12 Because formal judicial proceedings had not been initiated against Petitioner at the time of the
13 pretext call, Petitioner's right to counsel had not yet attached.  Accordingly, Petitioner is not entitled
14 to federal habeas corpus relief on this claim.

   **B.     Petitioner's Ground Two:  Instructions on the state's burden regarding extension of the statute of limitations for sex crimes against children**

   Petitioner's second claim is that the trial court's instructions on the burden of proof required to extend the statute of limitations violated his rights under the Fifth, Sixth and Fourteenth Amendments.  As noted by the Court of Appeals:

   > At the time of Riskin's trial, former section 803(g) permitted prosecution of specified sex crimes against a child after expiration of the normal statutes of limitations in sections 800 and 801 if (1) the child reported to law enforcement (2) a crime involving substantial sexual conduct (3) that independent evidence clearly and convincingly corroborated (4) if prosecution began within one year of the child's report.

23 See Resp't Lodged Doc. 5. at 3-4 (citations omitted).  The trial court instructed the jury that in order
24 for § 803(g) to apply, the prosecution had the burden of proving the statute's allegations by a
25 preponderance of the evidence and more specifically, that independent corroboration of the victim's
26 allegations must be proven by clear and convincing evidence.  See RT at 870-71; see also Resp't
27 Lodged Doc. 5 at 3.  After providing definitions for both the "preponderance" and "clear and
28 convincing" evidence standard, the trial court also instructed the jury that the "clear and convincing"

standard required a "higher standard of proof" than proof by a preponderance of the evidence. See RT at 870-71. Petitioner claims that the trial court's instructions providing these lower standards of proof violated his constitutional right to a jury determination on every necessary fact and ingredient beyond a reasonable doubt. In support of his claim, Petitioner cites to the United States Suprme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000) ("Apprendi") and Blakely v. Washington, 542 U.S. 296 (2004) ("Blakely"). See Amended Petition at 11-12.

The California Court of Appeal held that Petitioner's right to due process or Sixth Amendment right to a jury were not violated by the trial court's instruction. The Court of Appeal rejected Petitioner's argument that Apprendi and Blakely required proof of a reasonable doubt in order to extend the statute of limitations and to independently corroborate the children's accusations. The Court of Appeals stated:

> Second, the later cases on which [Petitioner] relies require proof beyond a reasonable doubt to a jury of "any fact [other than the fact of a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum." (*Apprendi*, *supra*, 530 U.S. at p. 490, 120 S.Ct. 2348; see *Ring*, *supra*, 536 U.S. at p. 588, 122 S.Ct. 2428; *Blakely*, *supra*, 542 U.S. at p. 301, 124 S.Ct. 2531; *Booker*, *supra*, 543 U.S. at p. 231, 125 S.Ct. 738.) Those cases "involve factual determinations that establish the level of punishment for which the defendant is eligible" [citation] and "make it clear the federal constitution guarantees a criminal defendant the right to a jury determination, based on proof beyond a reasonable doubt, of every element of the crime and every fact, however labeled, that increases the defendant's punishment beyond the prescribed statutory maximum" [citation]. The facts at issue in extension of the statute of limitations and independent corroboration of the children's accusations, however, are neither elements of the crime nor facts that establish punishment.

See Resp't Lodged Doc. 5. at 6-7 (some citations omitted).

The Court of Appeal's reasoning is persuasive and should not be disturbed.[9] Petitioner fails to cite any Supreme Court case that has expressly indicated that the beyond-a-reasonable-doubt standard applies to state procedural rules pertaining to its criminal statutes of limitations.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re

---

[9] The court of appeal also found that under state law, the statute of limitations was not an element of Petitioner's offenses, therefore, factual determinations concerning whether the charges were timely under state law were not required to be submitted and proven to a jury. See Resp't Lodged Doc. 5 at 6. This court will not second-guess the state court's conclusion on an issue of state law. Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Winship, 397 U.S. 358, 364 (1970) ("Winship").  However, Winship does not preclude the state from adopting a rule that makes it easier for the state to meet the requirement of proof beyond a reasonable doubt unless the rule itself violates a fundamental principle of fairness and therefore violates the Due Process Clause.  See Montana v. Egelhoff, 518 U.S. 37, 54-55 (1996) (due process not violated by a rule excluding intoxication as evidence to refute mens rea even though the rule made it easier for the state to prove mens rea beyond a reasonable doubt).

Moreover, not every predicate to a conviction is an element of the crime, and the state may assign a lesser quantum of proof to a fact that is not an element of the crime.  See Renderos v. Ryan, 469 F.3d 788, 796 (9th Cir. 2006) ("Renderos").  Neither does federal constitutional law require that the timeliness of a criminal prosecution be proven beyond a reasonable doubt.  Id. (state could require proof by clear and convincing evidence for findings necessary to trigger application of a statute that extended the statute of limitations for a crime).  The trial court's instructions on the standards of proof required to extend the statute of limitations was not unconstitutional.  Id.  Hence, the state court's rejection of this claim was not contrary to nor an objectively unreasonable application of Supreme Court precedent.  See 28 U.S.C. § 2254(d).

**C.     Petitioner's Ground Three:  The trial court's application of § 803(g) and Petitioner's ex post facto claim**

Petitioner claims that his conviction is unconstitutional because it was obtained in violation of the Ex Post Facto Clause and the state's statute of limitations as well as the "well known doctrine of latches."  See Amended Petition at 6.  More specifically, Petitioner claims that because section 803(g) was not in effect at the time the offenses were committed, it unlawfully permitted the prosecution for the offenses after the original statute of limitations had expired.[10]

Laws extending the limitations period for prosecution of a crime, which are enacted after the previously-applicable limitations period has expired, violate the Ex Post Facto Clause.  See Stogner v. California, 539 U.S. 607, 607-09 (2003).  If such laws are enacted before the pre-existing limitations period has expired, however, the enactment does not violate the Ex Post Facto Clause.

---

[10] To the extent Petitioner's claim is premised on state law, it fails, since federal habeas corpus relief will not lie to correct an alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67–68 (1991).

Renderos v. Ryan, 469 F.3d 788, 795 (9th Cir. 2006); United States v. Bischel, 61 F.3d 1429, 1435-36 (9th Cir.1995) (change in law extending statute of limitations after defendant committed offense but before original limitations period had run did not violate Ex Post Facto Clause).  The fact that the extension of the limitations period is conditional on certain events, such as corroboration and reporting of the crime to authorities, does not matter; instead, the focus is whether the limitations period has expired before the statute was enacted that extended the limitations period.  See Renderos, 469 F.3d at 795.

Petitioner's claim does not warrant federal habeas relief.  Petitioner was charged, inter alia with Count I, for the aggravated sexual assault of his daughter, (§ 269(a)), the crime alleged to have been committed between June 15, 1994, and June 14, 1998; Count III, for committing a lewd and lascivious act upon his daughter, by the use of force, violence, duress, menace, and threat of great bodily injury (§ 288(b)(1)), with the crime alleged to have been committed between June 15, 1994, and June 14, 1998; and Count IV, for committing a lewd and lascivious act upon his son, (§ 288(a)), with the crime alleged to have been committed between 1993 and 1995.  At the time of these charged sexual offenses the statue of limitations was 6 years.  See Cal.Penal Code § 800.  The statute of limitations for these offenses would have then expired between June 15, 2000 and June 14, 2004 for counts I and III and for count IV, between 1999 and 2001.  After the offenses were committed, but well before the statute of limitations had expired, section 803(g) became effective January 1, 1994, and provided under subdivision 1: "Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5."  Cal.Penal Code § 803(g).  Pursuant to this section, criminal complaints were filed in August and November of 2002, within a year of the dates the offenses were first reported by the two victims, in May through August of 2002.  See CT at 1-4 and 17-19; see also RT 239, 250-53, 251, 471, 480, 844-454.

Stogner held that a law had a constitutionally prohibited retroactive effect only where the statue is used "after expiration of a previously application limitations period . . . to review a

previously time-barred prosecution." See Stogner, supra, 539 U.S. at 632-633.  However, this is not so in Petitioner's case.  The effect of section 803(g) when it became effective in 1994 was to extend the statute of limitations on the charged offenses.  However, as discussed above, when 803(g) became effective in 1994, the statute of limitations on Petitioner's offenses had not yet expired. Under federal law, this extension of an unexpired statute of limitations does not violate the Ex Post Facto Clause.  See Renderos, supra, 469 F.3d at 795.  Accordingly, even assuming arguendo that Petitioner had properly exhausted this claim, there is no merit to Petitioner's ex post facto claim.

### D.    Petitioner's Ground Four:  Ineffective assistance of counsel claim

Petitioner's Ground Four alleges that he was denied the effective assistance of counsel in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments.  See Amended Petition at 6.  More specifically, Petitioner contends that his trial counsel lacked knowledge regarding; (1) rules challenging the admission of "other bad acts evidence" and "propensity evidence"; and (2) trial counsel's ability to present a "medical expert witness" who would have "provided reasonable and believable" testimony that the charged acts "were not sexually motivated".  See Amended Petition at 6.  Though not entirely clear, Petitioner appears to argue that his criminal conduct would have been explained by the expert as warranted by "medical advice." See Amended Petitioner at 6.

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements:  (1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. Strickland, 466 U.S. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a "strong presumption that counsel's conduct [falls] within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  Strickland, 466 U.S. at 687 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).

Second, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. Strickland, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. Id.

Here, Petitioner alleges that his trial counsel was unaware of the rules affecting the admission of "other bad acts" or "propensity" evidence and unaware of the possibility of employing a medical expert to aid in his defense. However, Petitioner fails to provide either (1) what specific "propensity" evidence his trial counsel should have challenged; or (2) what motions or objections his counsel could have raised in response to this unspecified evidence; or (3) the specifics of any expert testimony that would have supported his defense. Petitioner's conclusory allegations of ineffective assistance should be denied. See James v. Borg, 24 F.3d 20, 26 (9th Cir.1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Additionally, regarding the alleged failure to call a "medical expert," to establish prejudice caused by the failure to call a witness under Strickland, Petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony and that the witness would have created a reasonable probability that the jury would have reached a verdict more favorable to Petitioner. See Grisby v. Blodgett, 130 F.3d 365, 373 (9th Cir. 1997) (speculating as to what a proposed witness would say is not enough to establish prejudice); United States v. Harden, 846 F.2d 1229, 1231 32 (9th Cir.1988) (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify). Here, Petitioner fails to present any type of documentation, such as an

affidavit that this unnamed expert would have been available to testify.  In addition, the Court finds that Petitioner has not established the additional expert testimony would have created a reasonable probability that the jury would have reached a verdict more favorable to Petitioner.  In sum, Petitioner has failed to present any colorable ineffective assistance of counsel claim.  Thus, even presuming Petitioner had exhausted these arguments, Petitioner's claim lacks merit and he is therefore not entitled to federal habeas relief.

### **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that:

1. The petition for writ of habeas corpus be DENIED WITH PREJUDICE; and
2. The Clerk of the Court be DIRECTED to enter Judgment for Respondent; and
3. A Certificate of Appealability be DENIED.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within fourteen (14) court days after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **July 29, 2011**          /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE